## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ROGER BAKER,
ROBERT BERGLUND, and
JAN WROBLEWSKI,

                Plaintiffs,

v.

TOOLING SCIENCE, INC.,

                Defendant.

Civil No. 03-5310 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

John J. Gores, **GORES LAW OFFICE**, 7091 Highway 65 NE, Suite 201, Fridley, MN 55432, for plaintiffs.

Mary M.L. O'Brien and Debra L. Weiss, **MEAGHER & GEER, P.L.L.P.**, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for defendant.

Plaintiffs Roger Baker, Robert Berglund, and Jan Wroblewski are former employees of defendant Tooling Science, Inc. ("TSI"), a company that designs and builds plastic and die-cast molds. Plaintiffs allege that they were terminated based on their ages in violation of the Age Discrimination in Employment Act ("ADEA"), the Minnesota Human Rights Act ("MHRA"), and Minnesota Statute § 181.81. Defendant asserts that the plaintiffs were selected for termination as part of a reduction in force ("RIF") because they were less skilled and less motivated than other employees. Defendant moves for summary judgment. For the following reasons, the Court denies defendant's motion.

## BACKGROUND

Roger Baker was hired by TSI in 1995 at the age of 57 and worked there until he was laid off on September 2, 2001 at the age of 62.[1]  At the time of his termination, Baker worked in the CNC "bay," or department.  Most of the other employees in the CNC bay were younger than 40.  Three of these employees, Kormanik, Aguilar, and Depew, were hired by TSI in the spring of 2001.

Plaintiffs assert that Baker had nineteen years of experience as a programmer and manufacturing engineer on machines very similar to the CNC machines he was hired to run at TSI, was able to operate all of the CNC machines in his bay, was as or more efficient than he was required to be, consistently received salary increases, and, in contrast to many of the younger employees, had no attendance, tardiness, or extended break time problems.  According to plaintiffs, Baker was effectively replaced by the much younger Kormanik, Aguilar, and Depew.

According to defendant, although Baker received two weeks of training on CNC machines, Baker was only able to operate 2 out of 20 CNC machines and was not able to handle precise, intricate projects.  Defendant asserts that Baker failed to make efforts to improve his skills, and that the other employees in the bay had additional, more advanced or more versatile skills than did Baker.  Defendant states that the tasks formerly assigned to Baker were redistributed among the remaining employees, including Kormanik, Depew, and Aguilar.

---

[1] On February 22, 2002, the layoff was retroactively changed to a termination.

Robert Berglund was hired in 1978 and worked for TSI until he was laid off on October 12, 2001 at the age of 52.[2] Berglund worked in the manual bay. Approximately half of the other mold makers in the manual bay were under 40.

According to plaintiffs, Berglund was a versatile and accomplished employee, regularly sought out training from co-workers and manuals on new or advanced features of the machines, and had a twenty-five year long positive history at the company. Plaintiffs contend that Berglund was replaced by a much younger employee from Wroblewski's bay, Jacob Demary, who, although laid off earlier, was recalled just after Berglund was terminated.

According to defendant, Berglund had very little experience when he began working at TSI, worked primarily on manual machines, and, despite being told at least once that he needed to learn new machines and have a better attitude, made very little effort to improve his skills or learn the new technologies becoming increasingly prevalent in the industry. Defendant asserts that Berglund was less skilled than the other workers in his bay, could not operate a number of the machines in the bay, and was not willing to work second-shift.

Jan Wroblewski was hired by TSI in 1991 at the age of 45 and worked there until he was terminated on October 26, 2001 at the age of 55. Wroblewski worked in the back mold maker bay. More than half of his co-workers were under 40. One, John Michaels, was hired in the spring of 2001.

---

[2] Berglund's layoff was also changed to a termination.

Plaintiffs claim that Wroblewski could operate all of the machines in his bay, had more than fifteen years of experience in the design, manufacture, and operation of machines, and had a positive work history with no attendance, tardiness, or job performance problems at the company. Plaintiffs contend that Wroblewski was replaced by Michaels, a much younger horizontal bar operator hired shortly before Wroblewski was terminated.

According to defendant, Wroblewski, like Berglund, had very limited skills and experience, could not operate a number of the machines in the bay, did not take advantage of opportunities to seek more training and was not willing to work second-shift. After his termination, Wroblewski's work was redistributed to other employees including Michaels.

## ANALYSIS

I. **SUMMARY JUDGMENT**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

## II. CLAIMS

Claims of age discrimination under the ADEA, the MHRA, and Minnesota Statutes § 181.81 are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005); *Dietrich v. Canadian Pacific Ltd.*, 536 N.W.2d 319 (Minn. 1995) (holding that *McDonnell Douglas* applies to age discrimination claims under the MHRA); *Riebhoff v. Cenex/Land O'Lakes Agronomy Co.*, 1998 WL 901749 (Minn. Ct. App. Dec. 29, 1998) (analyzing MHRA and § 181.81 claims under *McDonnell Douglas*). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case consisting of the following elements: 1) he was at least 40 years old, (2) he was terminated, (3) he was meeting defendant's reasonable expectations at the time of his termination, and (4) he was replaced by someone substantially younger. *Haas*, 409 F.3d at 1035.[3] The defendant must then offer a legitimate, nondiscriminatory reason for the

---

[3] These elements are slightly different than those required in cases which indisputably involve a reduction-in-force, rather than the replacement of an older employee with a younger employee. In such a case, a plaintiff makes a prima facie case of age discrimination by establishing: (1) she is within the protected age group; (2) she met the applicable job qualifications; (3) she suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action. *Stidham v. 3M, Inc.*, 399 F.3d 935, 938 (8th Cir. 2005) (citing *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994)); *Hillebrand v. M-Tron Industries, Inc.*, 827 F.2d 363 (8th Cir. 1987) (distinguishing between cases involving

(Footnote continued on next page.)

termination. *Id.* Finally, the plaintiff must demonstrate that the nondiscriminatory reason is a pretext for age discrimination. *Id.*

### A.   Prima Facie Case

Defendant asserts that plaintiffs fail to make out a prima facie case because they were not replaced by younger non-protected workers. Defendant asserts that the new employees hired in the spring of 2001, including John Michaels, Juan Aguilar, Shawn Depew, and Steve Kormanik, were hired to replace employees who left the company on short notice while an expedited project was pending. According to defendant, plaintiffs' work was redistributed among existing workers.

Viewed in the light most favorable to the plaintiffs, the evidence presented indicates that defendant hired new younger employees capable of doing all of plaintiffs' jobs shortly before plaintiffs' termination at a time when the company should already have been worried about the possible need to cut costs, and that although the younger employees ostensibly were hired to work on one expedited project, defendant chose to terminate the plaintiffs rather than the new employees. The Court finds that the plaintiffs have adequately established a prima facie case. *See Yates v. Rexton, Inc.*, 267 F.3d 793, 799-800 (8th Cir. 2001).

_____
(Footnote continued.)

clearly established RIFs and disputed RIFs). In this case, defendant raises the RIF as a defense to plaintiffs' charges that they were replaced by younger employees. Plaintiff disputes that a reduction in force took place.

### B.   Legitimate Reasons

Defendant asserts that it, like the rest of the mold making industry, was severely affected by the downturn in the economy in the fall of 2001 and was forced to implement a RIF.  According to defendant, customer work orders dropped significantly, payroll dropped 36% from the second to the fourth quarter in 2001, and the company suffered a 43% drop in sales.  Defendant states that, before resorting to the RIF, it reduced hours and wages company-wide, cut benefits, imposed salary cuts on the owners, and instituted a wage freeze that lasted through January 2004.  Defendant contends that the managers of the departments laid off the plaintiffs because they were less skilled and less diverse in their skills than other employees in the departments and had demonstrated less willingness to learn new skills.  If believed, these reasons present legitimate, non-discriminatory reasons for plaintiffs' termination.

### C.   Inference of Age Discrimination

Plaintiffs assert that since 1997, the management at TSI has "systematically engaged in the creation of a younger workforce" by terminating, laying off, or otherwise removing from employment production employees who were over the age of 50 while at the same time hiring workers significantly younger than 50.  Additionally, plaintiffs assert, TSI has routinely excluded older employees from training on new equipment and from working on special projects and has singled out older workers for subjective performance criticisms while ignoring the same or worse behavior by younger employees.

In support of their theory, plaintiffs allege that between 1997 and 2001, 75% of the new mold makers hired by the company were under 40, while seven employees over the age of 50 were terminated between 1999 and 2001 and 75% of the employees terminated in the alleged RIF were not only over 40, but over 50.

Additionally, plaintiffs assert that, despite requests from Berglund and several other older employees, TSI did not train the older workers on a number of the machines. TSI also did not train Baker or Wroblewski on new machines purchased to replace machines they routinely worked on and did not suggest that either get any outside training. At the same time, TSI trained a number of the younger employees on this equipment.

Furthermore, plaintiffs argue that TSI did not have a formal evaluation process and, without one, could not have terminated plaintiffs based on objective criteria or records of employee skills, productivity, etc. The only objective records of employee performance relate to attendance and indicate that the younger workers retained by the company had significant tardiness and attendance problems, while the plaintiffs did not.

Finally, plaintiffs dispute all of TSI's statements in support of the proffered legitimate non-discriminatory reasons including the need for a RIF, the fact of a RIF, and the rationale for choosing plaintiffs to be part of the alleged RIF over other employees. Plaintiffs assert that TSI business records show no loss in sales between 2000 and 2001, demonstrate a significant increase in TSI's net income in 2001, and indicate that TSI neither reduced the owners' salaries nor implemented a wage freeze. Furthermore, plaintiffs claim that aside from the vacation time each took, none noticed a reduction in

their hours. Additionally, according to plaintiffs, TSI, at various times, has asserted that differing numbers of employees were eliminated in the fall of 2001 as part of the RIF, without revealing that at least three were quickly recalled, at least one left voluntarily, at least one was fired for cause, and one was never a regular employee, and that TSI hired nine new employees in 2001, four of whom were production employees.

The Court finds that the above evidence, if believed, is sufficient to permit a jury to conclude that the defendant's asserted non-discriminatory reason for plaintiffs' termination is a pretext for age discrimination.[4]  Accordingly, the Court denies defendant's motion for summary judgment.[5]

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 40] is **DENIED**.

---

[4] Plaintiffs and defendant also presented conflicting statistical evidence. The Court finds it unnecessary to examine this evidence in detail, as it finds the non-statistical evidence raised by plaintiffs sufficient to satisfy the third prong of the test. *See Stidham v. 3M, Inc.*, 399 F.3d 935, 938 (8th Cir. 2005) (noting that a plaintiff may demonstrate an inference of discrimination through adequate statistical evidence, or by providing other more anecdotal evidence of age discrimination).

[5] In light of the Court's determination, and because the Court has not resorted to or relied on the affidavit of Erma Frank or the exhibit is refers to, Exhibit AAAA, the Court denies as moot plaintiffs' appeal of the Magistrate Judge's Order denying plaintiffs' motion to strike the affidavit and exhibit. If this particular evidence becomes relevant at trial, plaintiffs may raise the issue with the Court at that time.

**IT IS FURTHER ORDERED** that plaintiffs' appeal of the Magistrate Judge's June 14, 2005 Order [Docket No. 82] is **DENIED AS MOOT** and the Magistrate Judge's June 14, 2005 Order [Docket No. 81] is **AFFIRMED.**

DATED: August 26, 2005
at Minneapolis, Minnesota.

        s/John R. Tunheim
        JOHN R. TUNHEIM
        United States District Judge